**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.J.**

**No. 21-0142** (Berkeley County 19-JA-112)

**MEMORANDUM DECISION**

Petitioner Mother V.V., by counsel Dylan Batten, appeals the Circuit Court of Berkley County's February 8, 2021, order terminating her parental rights to K.J.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Debbie Flowers Payne, filed a response on behalf of the child in support of the circuit court's order. The self-represented intervening foster parents, C.H. and S.H., also filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and violated her state and federal due process rights.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed a petition alleging that petitioner tested positive for buprenorphine, cocaine, and benzodiazepines during her pregnancy with the child. The DHHR alleged that the child suffered from withdrawal after birth, including severe undisturbed tremors, poor sleeping, excoriation, and inconsolability, among other symptoms. The child required morphine medication for her drug-exposure. Although petitioner's urine screen upon admission to give birth was negative, she admitted to using heroin while pregnant. The petition also alleged that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner raises no specific assignment of error challenging the circuit court's termination of her parental rights. As such, that issue is not addressed in this memorandum decision.

1

petitioner began abusing drugs as a teenager, after which she became involved in "selling heroin and crack [cocaine], running guns and dope up the highways." This activity resulted in her being sentenced to ten years of incarceration, although she only served seventy-two months. Petitioner also served two sentences for probation violations. Further, the DHHR alleged that shortly before the petition's filing, petitioner was charged with possession after law enforcement discovered marijuana, cocaine, and heroin in a vehicle she was driving. According to the petition, law enforcement recovered over three grams of cocaine and more than five grams of heroin, which was packed in several bags. Based on these facts, the DHHR alleged that petitioner abused and neglected the child. Following the petition's filing, petitioner waived her preliminary hearing.

Petitioner then filed an answer in which she made admissions to the material allegations and requested an improvement period. At a hearing in October of 2019, the court accepted petitioner's stipulation and found that she abused and neglected the child. The following month, the court granted petitioner a post-adjudicatory improvement period that required her to attend an addiction severity index assessment and adhere to the recommendations thereof, attend three Narcotics Anonymous ("NA") meetings each week, find an NA sponsor, complete a psychological evaluation and follow all recommendations thereof, consistently adhere to a visitation schedule with the child, complete a drug treatment program, and submit to random drug screens, among other requirements.

At a hearing in March of 2020, the court was informed that petitioner admitted to relapsing, having tested positive for cocaine at least three times in February and March of 2020 and having provided diluted screens since the prior hearing. The guardian also expressed concerns that petitioner could not care for the child due to the child's special needs and recommended that petitioner seek residential drug treatment. The matter was then scheduled for a hearing on April 15, 2020. However, due to the COVID-19 pandemic and the resulting judicial emergency, the hearing was rescheduled to June of 2020.

In preparation for that hearing, the guardian filed a motion to revoke petitioner's improvement period on June 14, 2020. In support, the guardian argued that petitioner had not submitted to a drug screen since March 13, 2020, despite being ordered to screen three times per week. The guardian also asserted that petitioner was no longer living at the residence she identified, the DHHR's attempts to contact her were unsuccessful, and petitioner had not contacted the DHHR in that timeframe. The guardian also asserted that petitioner's multiple positive and diluted screens, in conjunction with her failure to attend a March of 2020 multidisciplinary team ("MDT") meeting, were evidence of her noncompliance. The guardian noted that the DHHR suspended petitioner's visitation with the child in March of 2020 because of the child's fragile medical condition and petitioner's ongoing substance abuse and failure to participate in the MDT. The DHHR also filed a court summary in advance of this hearing that included petitioner's explanation for her lack of drug screens. According to petitioner, "[s]he did not go and drug screen because the few people she knows says that they are closed" and that "[s]he drove by the Day Report and reports that it looked closed." The report further indicated that petitioner had not provided any proof of NA attendance or having obtained a sponsor. The DHHR did report that petitioner was compliant with some services, such as her addiction assessment, her psychological evaluation, and a drug treatment program.

The court ultimately held several hearings on the guardian's motion in August and September of 2020, during which evidence was introduced that, in addition to her earlier positive drug screens, petitioner tested positive for cocaine through her treatment program in March of 2020 and cannabinoids in June of 2020. Further, the DHHR indicated that petitioner provided two additional screens that were positive for marijuana in June of 2020. In opposition to the motion, petitioner testified that she stopped drug screening because "when Covid hit, [she] was under the impression that everything was stopped until further notice." When questioned whether she had ever been informed by the DHHR or anyone from the MDT that drug screening was suspended, petitioner replied, "No." When asked about her multiple positive screens for cocaine in February and March of 2020, petitioner indicated that she "was stressed out." Petitioner also confirmed that at the time she tested positive for cocaine, she was already participating in the same substance abuse treatment program that she was participating in at the time of the hearing, having begun that program in July of 2019. Petitioner further admitted that she was dishonest with the psychologist who evaluated her by failing to disclose her use of cocaine at the time of the evaluation. Petitioner also denied having used marijuana, despite her positive screens. When asked why she tested positive for the drug, petitioner responded, "That's a good question because I would like to know."

Later that month, the court convened a second hearing on the guardian's motion, during which the DHHR caseworker testified that petitioner provided negative drug screens since August of 2020, but that the DHHR recommended termination of her parental rights. This recommendation was based on petitioner's failure to screen for approximately three months, her positive screens, and the fact that her lack of compliance caused a breakdown in her relationship with the child. According to the worker, petitioner had not seen the child since February of 2020. The caseworker testified that the child has special needs, including issues with feeding and a fortified diet. Based on several factors, the caseworker testified that petitioner had not been compliant with her improvement period. Petitioner then presented the testimony of personnel from her treatment program who addressed her progress. Neither individual could confirm that petitioner submitted to drug screens in their program between March 12, 2020, and June 3, 2020, the period during which petitioner failed to screen in accordance with the court's order.

In its order revoking her improvement period, the court noted petitioner's dishonesty with her psychological evaluator, her continued positive drugs screens, and her failure to follow the recommendations of her addiction assessment and psychological report. The circuit court cited several other requirements of her improvement period with which petitioner failed to comply, including her failure to attend all MDT meetings, contact the DHHR in the event of a change of residence, attend NA meetings, obtain an NA sponsor or recovery coach, and her extended failure to comply with drug screens. The court further noted that the child's special needs required "an extraordinary amount of time and attention," which was concerning given that petitioner blamed her relapse on the stress of caring for her grandmother. The evidence also indicated that the child's pediatrician continued to refer the child to specialists in an attempt to further improve the child's condition. Ultimately, the court found that petitioner's positive screens for cocaine, followed by three months of failure to screen, and then more positive screens "mitigate[d] against a finding that it is in the best interests of the [i]nfant to extend the time limits" for improvement periods and that petitioner should not be permitted to delay permanency for "this very fragile, special needs child." The court further found that "despite being over eleven . . . months into her improvement period, [petitioner] has failed to maintain her compliance with the improvement period terms throughout

the proceedings." The court also found that petitioner was "currently participating in the same program that she was participating in when she delivered a drug-affected baby. Clearly, more intensive treatment is required, yet [petitioner] has failed to follow the recommendations of the MDT to avail herself of such treatment." The court further found that petitioner's overall attitude remained unchanged, given that "[w]hen she became stressed, [she] turned to cocaine rather than any of the services available to her" through her treatment program or the MDT. Based on the evidence, the court found that there had been no true improvement in her drug addiction. Accordingly, the court terminated petitioner's improvement period.

Following the hearing, petitioner filed a motion for a post-dispositional improvement period. Thereafter, the DHHR filed a motion to terminate petitioner's parental rights. The court then held a dispositional hearing in January of 2021, during which petitioner again testified and presented testimony from personnel at her treatment program regarding her ongoing substance abuse treatment. According to a doctor who worked with petitioner in the program, petitioner had the potential to parent a child. The DHHR indicated that it supported termination of petitioner's parental rights because of the length of time that the child had been in foster care, although it acknowledged that petitioner "successfully remedied the conditions of abuse and neglect that were present at the time of the petition." However, the DHHR raised concerns that petitioner had no bond with the child. The court agreed that petitioner had made substantial improvements but recognized that she was not currently able to care for the child's special needs and was not bonded with the child because of the lack of visitation as a result of petitioner's noncompliance. The court further recognized that "[t]his is one of the harder ones" because of what petitioner had accomplished. At the end of the hearing, petitioner asked to address the court and stated that "[w]hen [the child] was first taken, they said for abuse and neglect of drugs," but petitioner questioned "why they keep saying abuse and neglect of illegal drugs" because she "had no drugs in [her] system when [the child] was born."

Ultimately, the court denied petitioner's motion for an improvement period, finding that she could not satisfy the burden of demonstrating a substantial change in circumstances because she continued in the same treatment program that she began in July of 2019 during her pregnancy, which was the same program she was in when she relapsed in early 2020. Most importantly, however, the court found that petitioner's statements at the hearing demonstrated that she "neither recognizes nor acknowledges that her drug use during pregnancy constituted abuse of her child." Based on her failure to acknowledge these conditions, the court found that petitioner failed to improve her overall attitude with respect to her drug use and its impact on the child's ongoing medical needs. The court also found that West Virginia Code § 49-4-610(9) precludes any combination of improvement periods from resulting in the child being in foster care more than fifteen months of the most recent twenty-two months, unless there are compelling circumstances that exceeding this timeframe is in the child's best interests. Given that the child had been in foster care for fifteen months and the delay in the case was caused by petitioner's relapse from February to June of 2020, the court found that it was not in the child's best interests to delay permanency any further. The court also found that the child's welfare would be seriously threatened if placed

4

in petitioner's care. As such, the court terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying her motion for a post-dispositional improvement period. According to petitioner, the guardian and DHHR's main reason for opposing the improvement period was the fact that the child had been in foster care beyond the timeframe set forth in West Virginia Code § 49-4-610(9), which directs that

> no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

According to petitioner, unreasonable delays caused by the COVID-19 pandemic and other continuances resulted in her being denied an additional improvement period simply because no additional time was allowable. We do not agree.

On the contrary, the circuit court denied petitioner's motion for a post-dispositional improvement period because she failed to satisfy the applicable burden for obtaining one. According to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a parent a post-dispositional improvement period when the parent has already been granted an improvement period if the parent "demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and that "due to that change in circumstances, the [parent] is likely to fully participate in the improvement period." The record shows that

---

[3]According to respondents, the father's parental rights were also terminated below. The permanency plan for the child is adoption in the current foster home.

petitioner did not establish a substantial change in circumstances that would have warranted a second improvement period. Petitioner makes much of the fact that she was participating in substance abuse treatment at the time the court denied her motion, but ignores the fact that this was the same treatment program she was participating in both when she gave birth to the drug-exposed child and when she underwent a significant relapse in February and March of 2020. Further, the record shows that petitioner tested positive for drugs later in June of 2020. Unlike her earlier positive screens, petitioner refused to acknowledge her ongoing substance abuse in the face of the positive screens from June of 2020. As such, it is clear that petitioner did not establish a substantial change in circumstances that warranted a post-dispositional improvement period.

Petitioner next argues that her state and federal due process rights were violated by the unreasonable delays below. According to petitioner, she "was denied a significant amount of time to demonstrate that she had made real and meaningful change to the [c]ourt, such that reunification was in the child's best interests." This argument is simply unsupported by the record. While it is true that some hearings in this matter were continued, including a continuation due to the COVID-19 pandemic and resulting judicial emergency, the record shows that petitioner's services continued throughout those periods. In short, petitioner was never deprived of time to show compliance with the terms and conditions of her improvement period. Instead, hearings had to be rescheduled to accommodate the parties' safety and other scheduling issues. Even more important, however, is the fact that the record shows that the only real delay in petitioner's progress below was entirely her own fault. It is undisputed that petitioner was never told that her required drug screens were halted, yet for a period of three months she failed to screen. Also important is the fact that shortly before she stopped screening and shortly after she resumed screening, petitioner tested positive for drugs. Further, because of her positive screens, failure to screen, and other noncompliance, petitioner's visits with the child were suspended. This resulted in petitioner's failure to bond with the child. Contrary to petitioner's arguments on appeal, all of these delays are directly attributable to petitioner's noncompliance.

Finally, at the end of the dispositional hearing, petitioner displayed an unwillingness after months of remedial services, to acknowledge that she had done anything wrong. As the court noted, petitioner's questioning of the allegations that gave rise to the petition's filing at that late stage of the proceedings demonstrated that the conditions of abuse and neglect could not be corrected. This Court has routinely held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Contrary to petitioner's argument, she was given ample time to demonstrate improvement. Instead of a lack of time, the evidence shows that it was, in fact, petitioner's unwillingness to recognize her own abusive and neglectful conduct that resulted in the termination of her parental rights. As such, we find no due process violation in the proceedings below.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 8, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton